UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ARIEL STANLEY, by her mother and court-appointed co-guardian Melinda Stanley,<br><br>     Plaintiff,<br><br>   v.<br><br>NANCY A. BERRYHILL,[1] Acting Commissioner of the Social Security Administration,<br><br>     Defendant. | Case No. 1:16-cv-01129-TWP-MJD |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Ariel E. Stanley ("Ariel") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her Application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). For the following reasons, the Court **REMANDS** the decision of the Commissioner for further consideration.

### I. BACKGROUND

**A. Procedural History**

On July 25, 2012, Melinda Stanley ("Melinda"), filed an application for SSI, alleging a disability of Borderline Intellectual Functioning for her daughter Ariel, beginning April 18, 1994, Ariel's date of birth. (Filing No. 13-2 at 19.) The claim was initially denied on October 2, 2012, and again on reconsideration on November 7, 2012. (Filing No. 13-2 at 19.) After filing a written request for a hearing, Ariel and her mother appeared and testified at a hearing held on May 9, 2014,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Commissioner Carolyn W. Colvin as the defendant in this suit.

in Indianapolis, Indiana before Administrative Law Judge Mark C. Ziercher (the "ALJ"). (Filing No. 13-2 at 19.) The claim was denied on August 26, 2014, and on March 2, 2016, the Appeals Council denied Ariel's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (Filing No. 13-2 at 19; Filing No. 13-2 at 2.) On May 6, 2016, Ariel filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (Filing No. 1.)

**B.     Factual Background[2]**

In November 2008, at age 14, Ariel was referred from the Indiana Bureau of Developmental Disability Services, to psychologist Jessica Jones, Psy.D. ("Dr. Jones"). (Filing No. 13-7 at 7.) Dr. Jones noted that Ariel had been previously diagnosed with Borderline Intellectual Functioning, ADHD, Auditory Processing Disorder, Amblyopia[3], and Microcephaly. (Filing No. 13-7 at 13.) Using the Stanford-Binet Intelligence Scale, Fifth Edition, Dr. Jones assessed Ariel with a verbal IQ score of 78, a nonverbal IQ score of 68, and a full scale IQ score of 72. (Filing No. 13-7 at 12.) This IQ score placed her intellectual functioning within the borderline range. (Filing No. 13-7 at 12.) Dr. Jones made a variety of recommendations, including that Ariel receive continued support and treatment through school programming, continue to take psychotropic medication for attention deficits, and receive screenings to determine if further formal speech, occupational therapy, and vision therapy services were warranted. (Filing No. 13-7 at 12-13.) Dr. Jones also stated that Ariel would benefit from services to help her maintain current functioning, learn new skills, and increase her independence. (Filing No. 13-7 at 13.) Dr.

---

[2] The parties' briefing contains detailed factual accounts of the relevant medical background. The Court recounts here only the facts relevant to the issues being appealed.

[3] Amblyopia is the loss of the ability to see clearly through one eye, also called "lazy eye". It is the most common cause of vision problems in children. https://medlineplus.gov/ency/article/001014.htm.

2

Jones also indicated that Ariel needed a structured environment, and indicated that she would benefit from the continued services of a legal guardian. (Filing No. 13-7 at 2.) She also suggested that Ariel continue to develop her social skills through community involvement, social events, and social skills therapy and training. (Filing No. 13-7 at 12.)

In March 2009, Ariel completed another Multidisciplinary Educational Evaluation, where she was administered the Woodcock-Johnson Tests of Cognitive Abilities, Third Edition. (Filing No. 13-7 at 30-31.) That evaluation concluded that her overall intellectual ability was in the low range. (Filing No. 13-7 at 36.) She demonstrated "very low" performance in processing speed, short term memory, and working memory. (Filing No. 13-7 at 36.) Her adaptive behavior skills were below average. (Filing No. 13-7 at 36).

As Ariel was about to enter high school, in March 2009, the Indiana Family and Social Services Administration found that Ariel met the definition of a person with a developmental disability. (Filing No. 13-7 at 3.) Ariel proceeded through high school with an Individualized Education Program which took into account a vision impairment, low adaptive behavior, and problems with short term memory. (Filing No. 13-8 at 32-41.) She completed high school with a series of accommodations. (Filing No. 13-8 at 11-41.) Her report cards reflected grades of A's. B's and C's, though with some D's and F's. Ariel was a member of the school band and from a young age has played the flute.

In March 2012, when Ariel was 17 years old, Dr. David Strus, Ph.D. ("Dr. Strus"), conducted a mental evaluation of Ariel for the purposes of determining whether a guardianship, in which her parents would serve as co-guardians, was appropriate for Ariel after she reached the age of 18. (Filing No. 13-7 at 66-68.) Dr. Strus concluded that Ariel "has generally done better than most would have predicted," given her microcephaly. (Filing No. 13-7 at 66.) Dr. Strus noted that

Ariel suffered from bullying and peer issues, and that while she did "reasonably well socially," she had also been the "victim of ostracism [at] about the level that would unfortunately be expected." (Filing No. 13-7 at 67.) He found that she lacked insight into the abstract issues of life, and that Ariel would "profit enormously" from her parents having a guardianship over her. (Filing No. 13-7 at 68.) Dr. Strus assessed a Global Assessment Functioning ("GAF") score of 50. (Filing No. 13-7 at 68.)

On June 15, 2012, a judge in the Howard County Circuit Court, Indiana, declared Ariel an "incapacitated adult" and appointed her parents as co-guardians over both her person and estate. (Filing No. 13-5 at 3.)

In May and August 2012, Ariel underwent further educational evaluations. (Filing No. 13-11 at 1-13.) The May 2012 evaluation concluded that Ariel's overall adaptive skills were below average. (Filing No. 13-11 at 4.) The August 2012 evaluation concluded that Ariel "demonstrated very weak pragmatic/critical social thinking skills that were commensurate with very weak language skills." (Filing No. 13-11 at 11.) In September 2012, Ariel was referred to Dr. Michael O'Brien, Psy.D. ("Dr. O'Brien") for a psychological evaluation. (Filing No. 13-8 at 70.) Dr. O'Brien assessed a full scale IQ score of 75, and diagnosed Ariel with a Disorder of Written Expression (per records) and Borderline Intellectual Functioning, and he assigned a GAF score of 63. (Filing No. 13-8 at 70.) Dr. O'Brien noted that Ariel's ability generally fell in the lower and borderline range. *Id.*

On October 2, 2012, Dr. Stacia Hill, Ph.D. conducted a review of Ariel's records. She concluded that Ariel demonstrated mild restrictions in activities of daily living; moderate restrictions in social functioning; and moderate limitations in concentration, persistence, or pace. (Filing No. 13-9 at 17.) On October 9, 2012, Ariel's treating physician Dr. William H. Mohr,

M.D. ("Dr. Mohr"), completed a questionnaire regarding Ariel's impairments. ([Filing No. 13-11 at 25](#)-.) Dr. Mohr indicated diagnoses of mental retardation; microcephaly; attention deficit disorder; stress incontinence; amblyopia and esotropia; and multiple musculoskeletal problems. ([Filing No. 13-11 at 25](#).) Dr. Mohr opined that Ariel was prevented from engaging in substantial gainful activities primarily because of her mental deficiency. ([Filing No. 13-11 at 26](#).)

In January 2013, General Motors ("GM") Benefits and Services Center approved Ariel as a "totally and permanently disabled" child. (Filing No. 17 at 20). In February 2013, Ariel was approved for traditional Medicaid benefits for the Aged, Blind, and Disabled from October 2012 and continuing. *Id.* On April 5, 2013, Ariel was approved for Vocational Rehabilitation Services through the Indiana Family Social Services Administration ("FSSA").

## II. STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB or SSI only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, she is not

disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In

reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

The ALJ began with the five-step analysis. At step one, the ALJ found that Ariel had not engaged in substantial gainful activity since July 25, 2012, the application date. ([Filing No. 13-2 at 21](#).) At step two, the ALJ found that Ariel had the following severe impairments: borderline intellectual functioning and adjustment disorder with mixed anxiety and depressed mood. ([Filing No. 13-2 at 21](#).) At step three, the ALJ concluded that Ariel did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. ([Filing No. 13-2 at 22](#).)

7

The ALJ then determined that Ariel had an RFC to perform a full range of work at all exertional levels with the following non-exertional limitations:

> She can understand, remember, and perform work tasks at GED Reasoning Level 02 (as defined in the Dictionary of Occupational Titles (DOT)). The claimant can perform goal-oriented rather than production-oriented work. She can perform work that does not involve financial transactions. The claimant can perform work that involves routine tasks (i.e., no more than occasional changes in core work duties on a monthly basis). She can have occasional contact with the general public and coworkers.

([Filing No. 13 at 24](Filing No. 13 at 24)).

At step four, the ALJ found that Ariel had no past relevant work. ([Filing No. 13-2 at 29](Filing No. 13-2 at 29).) At step five, the ALJ found that considering Ariel's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. ([Filing No. 13-2 at 29](Filing No. 13-2 at 29).) The ALJ therefore determined that Ariel is not disabled as defined in the Social Security Act and denied her application for SSI.

## IV. DISCUSSION

In her request for judicial review, Ariel asserts six basis of error: (1) the ALJ erred in failing to credit the State of Indiana's decree that Ariel is an incapacitated adult under the Full Faith and Credit Clause; (2) that the ALJ failed to consider Ariel's Disorder of Written Expression at step two, (3) the ALJ improperly concluded that she did not meet any Listed impairment at Step three, (4) the RFC decisions are not supported by substantial evidence; (5) the ALJ made erroneous credibility determinations; and (6) that the Appeals Council erred in not considering new and material evidence. The Court will address each assertion in turn.

### A. **Full Faith and Credit**

Ariel argues that under the Full Faith and Credit Clause of the United States Constitution, the State of Indiana decree declaring her an incapacitated adult has preclusive effect on the Social

Security determination. (Filing No. 17 at 28.) She contends that the decree mandated a finding of disability by the ALJ, and that therefore this Court should remand this case, not for further hearings, but for an immediate award of benefits. (Filing No. 17 at 29.) The Commissioner responds that the ALJ was not bound by the Indiana guardianship decree, and that the ALJ must make a disability determination based on social security law. (Filing No. 20 at 9.) The Commissioner contends that the ALJ adequately considered the decree, and no remand is necessary. (Filing No. 20 at 9-12.)

Social Security regulations are clear on this point: under 20 C.F.R. § 416.904, an ALJ is not bound by a disability decision made by another governmental agency. 20 C.F.R. § 416.904 (as amended); *see also, Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir. 2006). The Howard County guardianship determination does not have preclusive effect, and did not mandate a finding of disability. Further, the ALJ acknowledged the Indiana Guardianship Decree in his decision when he noted that Ariel's mother is the duly appointed guardian of Ariel's person and estate. (Filing No. 13-2 at 19 n.1). The ALJ also opened his administrative hearing with a discussion about the facts and circumstances surrounding the guardianship. (Filing No. 13-2 at 39-42). Any error to not weigh and consider the guardianship decree within other steps in the ALJ's decision was harmless error because a determination of disability made by another agency is not binding on the Commission. Accordingly, remand is not warranted on this basis.

**B.**     **Disorder of Written Expression**

Ariel next contends that the ALJ failed to consider her learnings Disorder of Written Expression, at step two. (Filing No. 21 at 21). The Commissioner acknowledges that the ALJ did not consider Ariel's Disorder of Written Expression; however, asserts that this error was harmless because the ALJ considered Borderline Intellectual Functioning, which was inclusive of Disorder

9

of Written Expression (Filing No. 20 at 13). This error was not harmless, and the failure to consider this impairment affected the remaining steps as the steps related to this impairment. The step two analysis of severity affects the ALJ's determinations at later steps. "This is not the only place, however, in which the severity of an applicant's conditions is properly part of the ALJ's analysis. It also affects the ALJ's determination of residual functional capacity, for example, and thus, no matter what happens at step two, a correct assessment remains important." *Farrell v. Astrue*, 692 F.3d 767, 772 (7th Cir. 2012)(citation omitted). Failure to consider a disorder or combination of impairments at step two, dispenses the ALJ's consideration of any effects the disorder might have on the claimant's ability to maintain employment. *See O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016) (holding "had the ALJ not excluded depression at Step 2, he would have been required to fully explore the restrictions caused by O'Connor-Spinner's depression"). The general impairment Borderline Intellectual Functioning, which is a categorization of intelligence for people with below average cognitive ability, does not take into account the effects of Disorder of Written Expression which is a learning disorder specific to poor writing skills. *Disorder of Written Expression*, MedlinePlus, https://medlineplus.gov/ency/article/001543.htm (last visited October 4, 2017). The ALJ's failure to consider Disorder of Written Expression, despite medical evidence confirming a diagnosis, infected later steps. Accordingly, the Court, remands this issue back to the Commissioner for further proceedings.

C. **Substantial Evidence**

Ariel challenges a variety of aspects of the ALJ's step 2, step 3, and RFC determinations on the basis that substantial evidence does not support the ALJ's conclusions. ([Filing No. 17 at 19-59](Filing No. 17 at 19-59).) The Court notes at the outset, as indicated above, the ALJ's failure to consider Ariel's

Disorder of Written Expression affected the remaining steps of the analysis. The Court also notes that for reasons explained above, Ariel's arguments regarding the guardianship decree is unavailing as to later steps.

### 1. **Paragraph B Criteria**

Ariel argues that substantial evidence does not support the ALJ's finding that she does not meet the Paragraph B criteria relevant to Listings 12.02 and 12.06. (Filing No. 17 at 31.) Specifically, she argues that the ALJ disregarded contrary evidence, including the state court guardianship decree and the underlying medical and evaluative evidence from Dr. Strus, in concluding that she did not exhibit marked limitations in two of the four broad areas of functioning. (Filing No. 17 at 31.) The Commissioner responds that substantial evidence supports the ALJ's finding. (Filing No. 20 at 14-16.)

In order to meet the requirements of Listings 12.02 (Organic Mental Disorders) and 12.06 (Anxiety Related Disorders), Ariel is required to show that she satisfies the "Paragraph B criteria." 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.02, 12.06. To do so, she must show that her mental impairments result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.02, 12.06. A "marked" limitation is one that is more than "moderate" but less than "extreme." *See Flener v. Barnhart*, 361 F.3d 442, 447 (7th Cir. 2004).

The ALJ concluded that Ariel has a mild limitation in activities of daily living; mild difficulties in social functioning; and moderate difficulties regarding concentration, persistence, and pace. With regards to daily living, the ALJ noted that the record showed that her restrictions

did not rise to a level that meaningfully interfered with daily living as she completed many daily living activities independent of supervision or direction. (Filing No. 13-2 at 22). With regards to social functioning the ALJ noted that Ariel suffered only mild restrictions that would interfere with her capacity to independently interact with others as evidenced by Dr. O'Brien's examination and the fact that she participated in marching band in high school. *Id.* at 22-23. The ALJ determined that Ariel had moderate difficulties in concentration, persistence, or pace based primarily on the accommodations she received in school and Dr. O'Obrien's evaluation. *Id.* at 23.

Ariel provided the ALJ with the underlying medical evidence submitted to the guardianship court in making its capacity and guardianship determination, which constitutes the "medical and other evidence of the existence of a disability," that the Commissioner claims here was lacking. Those records included findings such as Ariel's "very low" performance in processing speed, short-term memory, and working memory, (Filing No. 13-7 at 36), below average adaptive skills, (Filing No. 13-7 at 36), low range intellectual ability, (Filing No. 13-7 at 36), and social ostracism, (Filing No. 13-7 at 67). While the failure to mention the state incapacity decision at this stage in the analysis was harmless error because it is clear from the record that the ALJ considered it, the ALJ was required, at a minimum, to provide some analysis as to the import of Dr. Strus' underlying (and related) medical and evaluative evidence used in making the guardianship determination as it related to Paragraph B Criteria. This was notably absent from the ALJ's decision. There is an obvious tension between the evidence not evaluated at this stage (i.e. the declaration of incapacity and guardianship and Dr. Strus' report) and the determination that, for example, Ariel suffers only mild limitations in activities of daily living and social functioning.

Because the ALJ did not adequately consider lines of evidence surrounding Dr. Strus' opinion which related to the guardianship decree, the Court concludes that this issue must be remanded for further consideration.

### 2. **Paragraph C Criteria**

Ariel argues that the ALJ did not adequately consider her Paragraph C Criteria of an "inability to function outside a highly supportive living arrangement" because the ALJ did not consider Ariel's guardianship as a result of the incapacity determination. She also argues that the ALJ failed to consider Listing 12.05(C) because the ALJ incorrectly determined that Ariel's IQ score was invalid. The Commissioner responds that the ALJ's decision is based on substantial evidence because there are repeated references in the record that the purpose of Ariel's guardianship was for allowing her parents to manage her finances and that the ALJ did not consider an invalid, lone IQ score of 68 taken when Ariel was fourteen.

In order to meet the "C" criteria, Ariel must show that she has medically documented history of a chronic organic mental disorder of at least two years duration causing both a more than minimal limitation to do basic work activities with symptoms or signs attenuated by medication or psychosocial support, and either: (1) repeated episodes of decompensation, each of extended duration; or (2) a residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands or environmental changes would be predicated to cause the individual to decompensate; or (3) a current history of one or more years inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. 20 C.F.R. Part 404, Subpt.P, Appx.1, § 12.02 (C).

The ALJ considered Ariel's IQ score of 68 at age 14; however, noted that scores less than 70 are valid until the claimant reaches age 18 ([Filing No. 13-2 at 26](Filing No. 13-2 at 26)). Specifically, the ALJ noted

13

the IQ score taken at age 14 was valid but not current. *Id.* The ALJ noted that Ariel's results after age 18, were 71, 74, and 75. *Id.* For this reason, the ALJ determined that Ariel did not meet Listing 12.05 (C) Intellectual Disability, but that she did have a diagnosis of Borderline Intellectual Functioning. The Court finds that the ALJ's conclusion regarding the validity and weight given to Ariel's IQ tests were supported by substantial evidence.

The ALJ generally stated that the evidence failed to establish the presence of Paragraph C Criteria, but unlike his analysis of Paragraph B criteria, he did not discuss what evidence he considered during the "C" criteria. On remand, the Commission should consider and evaluate Ariel's evidence submitted regarding her highly supportive living arrangement and adaptive functioning deficits on this issue.

**D.     RFC Decisions**

The ALJ concluded that Ariel had the RFC to perform a full range of work at all exertional levels, but had certain non-exertional limitations as indicated in Section III above. ([Filing No. 1](#)3-2 at 24). Ariel argues that the RFC is not supported by substantial evidence because the ALJ failed to consider and weigh institutional opinions, rejected the testimony of Ariel's treating physician, Dr. Mohr, and never considered Dr. Strus' opinion. Ariel also argues that the ALJ's determination that Ariel could perform jobs that have a GED Reasoning Level of 2[4] was not supported by substantial evidence. ([Filing No. 1](#)7 at 52).

As indicated above, the ALJ's failure to consider Ariel's Disorder of Written Expression was reversible error that affected later steps. "When determining the RFC, the ALJ must consider all medically determinable impairments, physical and mental, even those that are not considered

---

[4] GED Reasoning Level 2 involves applying commonsense understanding to carry out detailed but uninvolved written or oral instructions and/or dealing with problems involving a few concrete variables in or from standardized situations.

14

"severe." *Craft v. Astrue*, 539 F. 3d 668, 676 (7th Cir. 2008)(emphasis in original) As to the remaining arguments, the Commissioner responds that the ALJ did consider Dr. Mohr and Dr. Strus' opinions, but assigned them very little weight.

"An RFC assessment must include a discussion explaining how specific medical and nonmedical evidence supports each conclusion." SSR 96-8p at *7 (S.S.A. July 2, 1996). "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is (1) supported by medical findings; and (2) consistent with substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2); *Skarbek v. Barnhart,* 390 F.3d 500, 503 (7th Cir. 2004).

It is not clear if the ALJ concluded that Dr. Mohr's opinion was neither supported by medical findings nor consistent with substantial evidence in the record because the ALJ rejected his opinion on the basis that Dr. Mohr made an opinion that Ariel was disabled, which is a determination reserved to the Commissioner. (Filing No. 13-2 at 27). Because the ALJ rejected Dr. Mohr's related medical diagnoses on this account, which had nothing to do with a flaw in Dr. Mohr's medical conclusions, this was a patently erroneous reason for rejecting it. On remand, the ALJ must adequately consider if Dr. Mohr's diagnoses are supported by medical findings and consistent with substantial evidence in the record. If Dr. Mohr's diagnoses clear these hurdles, then Dr. Mohr's opinion is entitled to controlling weight.

Dr. Strus conducted a mental evaluation of Ariel for the purposes of determining whether a guardianship was appropriate for her after she reached the age of 18. He assigned her a GAF score of 50. Ariel argues that the ALJ never considered Dr. Strus' opinion when he assessed her work abilities. ([Filing No. 21 at 21](Filing No. 21 at 21)). The Commissioner responds that the ALJ did consider Dr.

Strus' opinion when it referenced his notes of an updated IQ score of 71. This is impermissible cherry-picking of the evidence, because the rest of his opinion is mentioned nowhere else in making an RFC assessment. The ALJ only highlighted the portion of Dr. Strus' opinion that supported his determination. "[T]hese statements were cherry-picked from the record, selected without context in which they appear. An ALJ cannot rely only on the evidence that supports her opinion." *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013). This is reversible error.

There is a more fundamental flaw with the ALJ's decision failure to explicitly mention Dr. Strus' opinion. In *Craft v. Astrue,* the Seventh Circuit held that an ALJ's failure to mention detailed medical evidence regarding the claimant's mental assessment in the RFC analysis was reversible error as there was no "accurate and logical bridge." *See Craft*, 539 F. 3d at 677-678 ("we cannot tell whether the ALJ considered and rejected this piece of evidence because she did not mention it.") On remand, the ALJ should consider the entirety of Dr. Strus' opinion including his evaluation of Ariel's need for a guardianship in assessing Ariel's RFC.

Ariel argues that the totality of the evidence did not support the ALJ's conclusion that Ariel could perform jobs with a GED Reasoning Level 2 and lacks a logical bridge. The Commission responds that any error caused by the ALJ's unclear conclusion regarding the GED Reasoning Level 2 was resolved at Step 5 where the VE stated that Ariel could perform three positions that involved "unskilled work." As noted above, the ALJ's decision contained lines of medical evidence[5] that were not adequately considered in earlier stages and in the RFC analysis. The Seventh Circuit has held that the label of "unskilled" work does not provide information about a claimant's mental condition or abilities and that an ALJ's RFC's analysis should reflect some work requirements relevant to mental abilities when the issue arises. *Id.* at 677. Thus, a determination

---

[5] The incapacity decree, Drs. Strus and Mohr's opinions, and Ariel's Written Expression Disorder were not adequately considered in the RFC analysis.

16

of a RFC limited to "unskilled work" would not cure any deficiencies regarding a failure to account for work restrictions caused by a mental impairment. On remand, the ALJ should consider and evaluate Ariel's underlying medical and institutional evidence that exhibited mental difficulties with concentration, persistence, pace, and repetition that might have an effect on her work restrictions and incorporate those restrictions into his RFC analysis.

### E. Credibility Determinations

The factors that the ALJ must consider when assessing the credibility of a claimant's statements include the claimant's daily activities; the location, duration, frequency and intensity of the claimant's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate the symptoms; any measures other than treatment the claimant uses or has used to relieve symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to symptoms. SSR 96-7p; 20 C.F.R. § 404.1529(c)(3). Because credibility is largely a factual determination, and because the ALJ is able to perceive witness testimony firsthand, the court will not upset credibility determinations so long as there is some support in the record and the ALJ is not "patently wrong." *Herron*, 19 F.3d at 335; *see Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (credibility findings are afforded "considerable deference" and can only be overturned if they are unreasonable or unsupported). "When assessing an ALJ's credibility determination, [the court does not] undertake a *de novo* review of the medical evidence that was presented to the ALJ. Instead, [the court] merely examine[s] whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413. Only when the ALJ's determination lacks any explanation or support will the court determine that her credibility determination is "patently wrong" and requires reversal. *Id.*

Ariel argues that the ALJ made erroneous credibility determinations based on Ariel's testimony, and testimonies from her mother and her job coach Cindy Devarey ("Devarey"). The Commissioner responds that the ALJ properly considered the testimonies of Ariel and her mother and although, the ALJ cited the wrong exhibit with regards to Devarey's statement, in any event, the correct statement would have further buttressed his decision with more compelling evidence because the statement indicated Ariel performed "very well" at a mock interview for a cleaning position. ([Filing No. 20 at 29](Filing No. 20 at 29)).

The Court first notes that the ALJ found Ariel's testimony credible; however found that her Borderline Intellectual Functioning impairment, education records, and reports to examiners reflect only mild restrictions in activities of daily living and mild difficulties in social functioning. ([Filing No. 13-2 at 28](Filing No. 13-2 at 28).) Ariel argues that the ALJ took too narrow of a view of her activities of daily living. The Court finds that because the ALJ found Ariel's testimony was credible and weighed her testimony against the full record, his determination that she had only mild restrictions and difficulties was not patently wrong to the extent of the evidence that he considered on the record.[6] The ALJ found her mother's testimony partially credible because he found that Ariel's mother had personal interest in the outcome as she will also benefit financially if Ariel is found disabled. Because the ALJ articulated some support from the record in determining the credibility of Ariel's mother and found her partially credible, his determination was not patently wrong. Further, had the ALJ properly considered Devarey's statement, it would have provided evidence against a disability conclusion. This was harmless error.

Accordingly, the Court concludes the ALJ adequately articulated minimal justifications for his credibility determinations and remand is not warranted on this issue. *See Scheck*, 357 F.3d at

---

[6] See Section C1, *supra*.

18

700; *see also Sawyer v. Colvin*, 512 F. App'x 603, 607 (7th Cir. 2013) ("[t]his court gives considerable deference to an ALJ's credibility finding and will uphold it unless "patently wrong") (citations omitted). Nevertheless, the ALJ should determine how the incapacity decree and other evidence that he did not consider affects Ariel's restrictions on remand.

**F.     Appeals Council**

A claimant may seek review of an ALJ's decision by submitting additional evidence to the Appeals Council. 20 C.F.R.  § 404. 970(b). The Appeals Council "consider[s] the additional evidence" only if the evidence is 1) "new," 2) "material," and 3) "relate[d] to the period on or before the date of the administrative law judge hearing decision." *Brown v. Colvin*, No. 1:14-cv-01797-JMS-JMD, 2015 WL 3886029 at *12 (S.D.Ind. June 22, 2015.)  Evidence that meets this three-part test is deemed "qualifying" evidence. *Id.* at *13. After the evidence meets this threshold, the Appeals Council then proceeds to review the entire record, which includes exhibiting the "qualifying" evidence into the administrative record and determines whether the ALJ's decision is contrary to the weight of the evidence. *Id. See Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir.2012). If the Appeals Council determines that the additional evidence fails any part of the three-part test, outlined above then the Council "will prepare a denial notice" and [n]ot exhibit the evidence. *Brown*, 2015 WL 3886029 at *13 (*quoting* HALLEX I–3–5–20(A), 1993 WL 643143, at *1). Remand by the district court is appropriate only where new evidence is "material to the claimant's condition during the relevant time period encompassed by the disability application under review." *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989).  The district court's standard of review for the Appeals Council's determination of additional evidence as "qualifying" is *de novo*. *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012).

When the Appeals Council concludes that the evidence is not "qualifying", it should still associate the evidence that it rejected with the applicant's file, so that the Federal Court can review the evidence to determine the limited question of whether the Appeals Council's conclusion that the evidence was not new and material was correct. *Barnhill v. Colvin*, No. 1:15-cv-JMS-MJD, 2016 WL 6680358 at *7 (S.D.Ind. November 14, 2016). The Appeals Council found that the evidence was "non-qualifying," because it was not new or material, but failed to associate the evidence in Ariel's file for this Court's review. On remand, the Court orders the Commissioner to make part of the certified administrative record the additional evidence by association the additional evidence that Ariel submitted to the Appeals Council and the Appeals Council rejected.

## V. **CONCLUSION**

For the reasons set forth above, the final decision of the Commissioner is **REMANDED** for further proceedings consistent with this Entry as authorized by Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Date: 1/12/2018

_(signature)_

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Adriana Maria de la Torre
THE DE LA TORRE LAW OFFICE LLC
adriana@dltlawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov